IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| Andrew Albert, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 1:20-cv-901-WCG |
| Oshkosh Corporation, *et al.*, | ) |
|       Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Bernard J. Bobber
Kevin J. Kinney
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1243 North 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: 414.239.6300
Fax: 414.755.8289
bernard.bobber@ogletree.com
kevin.kinney@ogletree.com

Mark E. Schmidtke
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: 219.242.8668
Fax: 219.242.8669
mark.schmidtke@ogletree.com

Deborah S. Davidson
Samuel D. Block
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: 312.324.1159/1715
Fax: 312.324.1001
deborah.davidson@morganlewis.com
samuel.block@morganlewis.com

Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5258
Fax: 215.963.5001
jeremy.blumenfeld@morganlewis.com

Matthew J. Sharbaugh
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202.739.5623
Fax: 202.739.3001
matthew.sharbaugh@morganlewis.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | DISCUSSION | 2 |
| | A.   Plaintiff Fails To Plausibly Allege That Oshkosh's Fiduciary Process For Administering The Plan Was Imprudent | 2 |
| |     1.   Plaintiff's Criticisms Of The Plan's Actively-Managed Investments Fail To Create Any Inference Of Imprudence. | 4 |
| |     2.   Plaintiff's Criticisms Of Certain Investments On Share-Class Grounds Fail To Create Any Inference Of Imprudence. | 6 |
| |     3.   Plaintiff's Criticisms Of The Plan's Recordkeeping Fees Fail To Create Any Inference Of Imprudence. | 9 |
| | B.   Plaintiff Fails To State Any Disloyalty Or Monitoring Claims. | 12 |
| | C.   Plaintiff Fails To State Any Prohibited Transaction Claims. | 13 |
| | D.   Plaintiff Lacks Article III Standing As To Investments He Never Selected. | 14 |
| III. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Agnew v. NCAA*,
  683 F.3d 328 (7th Cir. 2012) ...................................................................................................15

*Bash v. Firstmark Standard Life Ins. Co.*,
  861 F.2d 159 (7th Cir. 1988) .....................................................................................................8

*Davis v. Salesforce.com, Inc.*,
  2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ..............................................................................6

*Divane v. Nw. Univ.*,
  953 F.3d 980 (7th Cir. 2020) ............................................................................................ passim

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ............................................................................................ passim

*Klingforth v. Specialized Loan Servicing, LLC*,
  2017 WL 5135606 (E.D. Wis. Nov. 6, 2017) ...........................................................................12

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) ............................................................................................ passim

*Marks v. Trader Joe's Co.*,
  2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ..........................................................................12

*Martin v. CareerBuilder, LLC*,
  2020 WL 3578022 (N.D. Ill. July 1, 2020)......................................................................2, 6, 10

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ..............................................................................................11, 12

*Ortiz v. Am. Airlines, Inc.*,
  2020 WL 4504385 (N.D. Tex. Aug. 5, 2020) ..........................................................................15

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .............................................................................15

*Thole v. U.S. Bank*,
  140 S. Ct. 1615 (2020) ..............................................................................................................14

*Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP*,
  626 F. App'x 713 (9th Cir. 2015) ...............................................................................................6

# TABLE OF CONTENTS
(continued)

**Page**

*White v. Chevron Corp.*,
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................................................................12

**STATUTES**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.
   ("ERISA") ................................................................................................................ *passim*

**RULES**

Rule 12(b)(6) .............................................................................................................2, 3, 4, 12

## I. INTRODUCTION

Through its opening brief, Oshkosh established that Plaintiff's Amended Complaint is subject to dismissal because it advances the same sorts of allegations that the Seventh Circuit has repeatedly held insufficient to state plausible claims under ERISA. *Divane v. Nw. Univ.*, 953 F.3d 980 (7th Cir. 2020); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). Nothing in Plaintiff's opposition changes that result.

Plaintiff instead invokes a strategy designed to evade any scrutiny of his claims. Right from the start, he faults Oshkosh for "promot[ing] a results-based analysis" of his claims, instead of a "process-based analysis." (Dkt. 28 ("Opp'n") at 1.) Because ERISA fiduciary-breach claims are supposed to "focus[] *only* on the process," Plaintiff says (*id.* at 2), the Court should not scrutinize his allegations about Oshkosh's results—*i.e.*, the types and costs of the Plan's investment options, and the amount of the Plan's recordkeeping fees. But if that were true, there would be nothing left to the Amended Complaint. After all, Plaintiff admits that he does not allege *any facts* about Oshkosh's process. (*Id.* at 5; Am. Compl. ¶ 185.) Instead, he attempts to state claims through allegations about the results, which he contends "inferentially lead to a plausible conclusion that the process Defendants followed" was improper. (Opp'n at 5.) Given Plaintiff's choice to plead his claims in this way, the Court can and must test the sufficiency of those results-based allegations to determine whether they create an inference of imprudence.

From there, the Seventh Circuit's on-point decisions in *Divane*, *Loomis*, and *Hecker* confirm that Plaintiff's allegations are insufficient to create any inference that Oshkosh's fiduciary process was imprudent. *Divane*, *Loomis*, and *Hecker* straightforwardly resolve Plaintiff's claims because the Seventh Circuit in those cases held that the same sorts of allegations Plaintiff offers here—*i.e.*, attacks on a plan's investments for being actively-managed or for allegedly costing too much, and criticisms about recordkeeping fees—do not create an inference that a plan's fiduciary

process was imprudent. Those precedents apply with full force, and they doom Plaintiff's claims for fiduciary breach under Rule 12(b)(6).

Plaintiff's secondary claims fare no better. Plaintiff concedes his disloyalty claims by failing to respond to Oshkosh's arguments that they are nothing more than a repackaging of his imprudence claims. Plaintiff similarly fails to respond to Oshkosh's actual arguments for dismissal of his prohibited-transaction claims. Instead, he tilts at windmills by asserting that Oshkosh cannot rely on a prohibited-transaction *exemption* to seek dismissal of his claims, when the point is that his allegations do not even describe anything that amounts to a prohibited transaction in the first place. And on that threshold issue, Plaintiff has no answer because there is none. Finally, Plaintiff acknowledges that his failure-to-monitor claims are derivative of his primary theories.

The Court should dismiss Plaintiff's Amended Complaint in its entirety and with prejudice.

## II. DISCUSSION

### A. Plaintiff Fails To Plausibly Allege That Oshkosh's Fiduciary Process For Administering The Plan Was Imprudent

Plaintiff acknowledges (Opp'n at 5, 8-9) that ERISA's "prudence standard is process-based, not outcome-based." *Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) (citing *Divane*, 953 F.3d at 992). Yet Plaintiff also admits that he does not "know the particulars of [Oshkosh's] process" for administering the Plan (Opp'n at 5), and the Amended Complaint certainly does not include any allegations about Oshkosh's process (*see* Am. Compl. ¶ 185 (asserting that Plaintiff has "no knowledge of Defendants' process")).

These points, taken together, confirm that Plaintiff's claims of fiduciary breach cannot survive Rule 12(b)(6) unless he pleads other allegations sufficient to create an inference that Oshkosh's fiduciary process was imprudent. *See Divane*, 953 F.3d at 987-88. To that end, Plaintiff recognizes that Seventh Circuit precedent requires him to allege activity that was "objectively

2

unreasonable," meaning "that no 'hypothetical prudent fiduciary' would have made the same objective choice[s]." (Opp'n at 6-7 (quoting *Divane*, 953 F.3d at 988).) When viewed through that governing lens, the Amended Complaint comes nowhere close to passing muster.

After all, as Oshkosh explained, the Seventh Circuit in *Divane* recently rejected fiduciary-breach claims very similar to Plaintiff's claims here based on the same allegations. (*See* Dkt. 26 ("MOL") at 9-10.) Plaintiff's opposition fails to engage with *Divane*—or the Seventh Circuit's prior decisions in *Loomis* and *Hecker*—other than to suggest that Oshkosh is "plac[ing] an incorrect gloss on those cases[.]" (Opp'n at 13.) But Oshkosh is not arguing that those precedents "establish[] some level of fees or expenses that are always prudent as a matter of law," as Plaintiff contends. (*Id.* at 2.) Rather, the Seventh Circuit in those cases held that, without allegations directly related to the fiduciary process (like here), certain types of circumstantial allegations cannot, as a matter of law, create an inference that a fiduciary process was imprudent. And the allegations the Seventh Circuit rejected as insufficient in those cases are the same types of allegations Plaintiff puts forward here—*i.e.*, that a retirement plan: (a) did not offer cheaper passively-managed index funds instead of actively-managed investment options; (b) did not select the cheapest share classes of certain investments; or (c) allegedly paid too much in recordkeeping fees. *Divane*, 953 F.3d at 983.[1]

Plaintiff cannot ignore his way around this precedent. And for the same reasons the claims in *Divane*, *Loomis*, and *Hecker* fell short, Plaintiff's claims fall short here.[2]

---

[1] When Plaintiff addresses *Divane*, he asserts that "lower courts are already misreading *Divane*[]"—*i.e.*, that courts are rejecting claims like his based on *Divane*—and that the Supreme Court is considering hearing the case because lower courts are misreading it. (Opp'n at 2 n.1.) Plaintiff cannot wish away binding precedent with the hope that the Supreme Court will hear the case and overturn it.

[2] Footnote 4 of Plaintiff's opposition is emblematic of his head-in-the-sand approach to these controlling precedents. Out of the ten cases that he says have allowed allegations like his to proceed past Rule 12(b)(6), nine of them were issued by courts outside of the Seventh Circuit. (*See* Opp'n at 6 n.4.) Obviously, those out-of-circuit courts were not bound by the Seventh Circuit's holdings in *Divane*, *Loomis*, or *Hecker*, so

3

### 1. Plaintiff's Criticisms Of The Plan's Actively-Managed Investments Fail To Create Any Inference Of Imprudence.

As Oshkosh explained in its opening brief, Plaintiff cannot show imprudence based simply on the fact that the Plan offered participants the choice to invest in some higher-cost, actively-managed investment options instead of the lower-cost, passively-managed investments that the Amended Complaint prefers. (*See* MOL at 11-13.) The Seventh Circuit rejected this exact theory in *Divane*. 953 F.3d at 989. The court instead held that where a plan "offer[s] a wide range of investment options and fees," as here, the opposite inference emerges—*i.e.*, that the fiduciary process was lawful and prudent. *Id.* at 992; *see also Loomis*, 658 F.3d at 670 ("By offering a wide range of options … [a] plan complie[s] with ERISA's fiduciary duties."); *Hecker*, 556 F.3d at 586 (similar). Against those facts, ERISA litigants cannot create an inference of imprudence by cherry-picking some less expensive alternative investments they think should have been offered instead. *Loomis*, 658 F.3d at 679 ("The fact that … some other funds might have had even lower ratios is beside the point."); *Hecker*, 556 F.3d at 586 (similar).

Here, because the Plan's investment lineup offered a diverse mix of investments with expense ratios falling squarely within the range that the Seventh Circuit has recognized as prudent—ranging from 0.035% to 1.08% (*see* Dkts. 26-6 to 26-11, Exs. 6-11, 404a-5 Disclosures)[3]—Plaintiff cannot create an inference of imprudence based on his assertions that the Plan allegedly "retained high-cost funds." (Opp'n at 23-27.) In fact, Plaintiff's own actions demonstrate the prudence of the Plan's diverse array of funds: despite the Amended Complaint's stated preference for passive management and the availability of passively-managed funds in the

---

they are no help to Plaintiff here. Otherwise, the single decision Plaintiff cites from within this circuit, *Spano v. Boeing*, is a summary-judgment ruling that was not applying Rule 12(b)(6); when the *Spano* court issued its earlier motion-to-dismiss ruling in 2007, *Divane*, *Loomis*, and *Hecker* had not been decided.

[3] Plaintiff does not challenge the Court's ability to consider the Plan's fee disclosures (or other exhibits) filed with Oshkosh's motion, which are properly before the Court on Rule 12(b)(6). (*See* MOL at 3-4 n.2.)

Plan, almost all the investments he selected are actively-managed. (*See* Dkt. 27, Schmidt Decl. ¶¶ 4-5.) Notwithstanding that Plaintiff's actual investment selections clash with his legal theories in this case, the Seventh Circuit has recognized that Oshkosh's decision to make different options available to him (and other participants) is reflective of prudence. (*See* MOL at 12-13.)

Plaintiff advances a few other arguments, but none holds merit. For one, even though Plaintiff agrees that "actively managed funds can make up part of a well-managed Plan," he hopes to distract the Court from that premise with unsupported arguments about Oshkosh's supposed process. (Opp'n at 24 (citing Am. Compl. ¶ 179).) But Plaintiff admits he has "no knowledge of Defendants' process for selecting and regularly monitoring investments," and the Amended Complaint certainly does not allege any *facts* about that process. (Am. Compl. ¶ 185 (emphasis added).) *See Divane*, 953 F.3d at 987 ("[W]e need not accept as true … unsupported conclusory factual allegations."). That leaves Plaintiff with the bare fact that Oshkosh chose to offer some actively-managed options as part of the Plan's investment line-up, which does not show imprudence, as the Seventh Circuit says.

Otherwise, Plaintiff contends he has done more than just point to cheaper investments because, as he puts it, the Amended Complaint includes "comparative tables to infer an imprudent process." (Opp'n at 26 (citing Am. Compl. ¶ 172).) But the only data point compared by the "comparative tables" is cost (*i.e.*, the investments' expense ratios), and the Seventh Circuit has repeatedly held that investment cost alone cannot demonstrate imprudence. *Divane*, 953 F.3d at 989; *Loomis*, 658 F.3d at 670; *Hecker*, 556 F.3d at 586. Indeed, the complaint in *Divane* included the same sorts of charts and comparative tables. *See Divane v. Nw. Univ.*, No. 18-cv-2569, Dkt. 38, Am. Compl. ¶¶ 161, 176 (Dec. 15, 2006). Moreover, Plaintiff's cost-focused "tables" are especially meaningless because he is purporting to compare the costs of two distinct types of

5

investments: passive and active. Passively-managed funds are almost always a lower-cost option because they "simply track a designated portfolio" without hands-on trading, whereas actively-managed funds are "actively" managed by investment advisors who "try to find and buy underpriced securities while selling ones that the advisers think are overvalued," which typically means "higher brokerage fees and higher administrative expenses." *Loomis*, 658 F.3d at 669-70. Given these definitional distinctions between passively- and actively-managed investments, courts routinely reject any comparison between the two is "apples to oranges." *Martin*, 2020 WL 3578022, at *4 (quoting *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020)); *see also, e.g.*, *Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP*, 626 F. App'x 713, 716-17 (9th Cir. 2015) (rejecting comparison between passive index funds and actively-managed funds); *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *3 (N.D. Cal. Oct. 5, 2020) (dismissing claim based on similar comparison because "[p]assively managed funds … cannot serve as meaningful benchmarks for actively managed funds"). The same should hold true here.

### 2. Plaintiff's Criticisms Of Certain Investments On Share-Class Grounds Fail To Create Any Inference Of Imprudence.

Plaintiff's cost-focused allegations concerning the share-class categories for a handful of the Plan's investments fare no better. As Oshkosh's opening brief explained, the Seventh Circuit has rejected attempts to show imprudence by attacking the cost of certain investments, including based on allegations that a plan should have selected a less-expensive share class of an investment. (MOL at 13-17.) It is not enough, the Seventh Circuit says, for an ERISA litigant to assert that some investments "had unnecessary layers of fees" or "could have been cheaper." *Divane*, 953 F.3d at 991; *see also Loomis*, 658 F.3d at 670 (similar).

Plaintiff tries to sidestep the Court of Appeals' precedent by arguing that his allegations are different from those rejected in *Divane* and *Loomis*, since, in his view, those cases focused on

6

"retail funds" versus "institutional funds." (Opp'n at 20-21.) Plaintiff says his allegations are "more precise" because of his net-investment-expense theory, which applies "regardless of whether [the funds] are considered retail or institutional." (*Id.* at 21.) This rejoinder fails for at least two reasons. First, it is a distinction without a difference. Regardless of how Plaintiff tries to dress up his allegations, they boil down to the same basic proposition that the Seventh Circuit has rejected—that "Defendants could have selected share classes that would have cost participants less." (*Id.*) Second, at a more granular level, *Hecker* specifically rebuffed the sort of slicing and dicing of investment expense ratios that Plaintiff promotes; instead, the court held that "[t]he total fee, not the internal, post-collection distribution of the fee, is the critical figure[.]" *Hecker*, 556 F.3d at 586. Plaintiff's only answer is to try to cast aside *Hecker* as outdated, but that effort fails. What does it matter, for instance, that "the *Hecker* complaint was filed in 2006"? (Opp'n at 23.) The Seventh Circuit decision came years later in 2009, by which time Plaintiff says his "net-investment-expense" theory had become a "critical consideration" (*id.*), yet the court rejected the premise all the same. Regardless, *Hecker* stands as the law of the circuit, and Plaintiff's arguments for overruling the decision must be directed to the Seventh Circuit, not this Court.[4]

Plaintiff also misunderstands Oshkosh's point in its opening brief (MOL at 13-15) about the Amended Complaint's about-face as to what share classes Oshkosh should offer. Oshkosh is not arguing, as Plaintiff states, that Plaintiff is bound to the allegations of his initial complaint, or that the mere existence of contradictions between the complaints necessitates dismissal of his share-class claim. (Opp'n at 4 n.3.) Oshkosh's point is that the substance of his about-face—the Complaint's allegation that Oshkosh *should have* offered share classes with the cheapest expense

---

[4] For the same reasons, *Hecker* forecloses Plaintiff's argument that Oshkosh allegedly breached a duty by not breaking out the revenue-sharing formulas in the Plan's fee disclosures. (*See* MOL at 15 n.15.) *Hecker* holds that fiduciaries need not disclose that level of detail, and it is no answer to call the ruling "outdated."

ratios and the Amended Complaint's allegation that Oshkosh *should not have* offered those exact share classes—forecloses a claim that Oshkosh's share-class decisions were "objectively unreasonable," or that a prudent fiduciary could not have considered either alternative. *Divane*, 953 F.3d at 988. ERISA does not subject fiduciaries to the "inequity of the heads I win, tails you lose variety," *Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 163 (7th Cir. 1988), and Plaintiff cannot support an inference of imprudence based on a choice between two options about which his own counsel has advocated shifting opinions.

Apart from these legal points that render Plaintiff's share-class allegations immaterial to the question of imprudence, his theory also suffers from practical flaws. As Oshkosh noted, some of Plaintiff's preferred investments carry additional fees that could offset any arguable financial savings to participants vis-à-vis the lowest net-investment-expense share class that he prefers. (*See* MOL at 15-16.) In response, Plaintiff criticizes the example Oshkosh identified by asserting that "no prudent fiduciary would ever include funds with [sales] loads." (Opp'n at 22.) But that is exactly Oshkosh's point. Since at least some of Plaintiff's comparisons might actually cost more, Plaintiff's share-class comparisons hardly show objective unreasonableness. And while Plaintiff says the sales charge could have been waived, he certainly does not allege those facts in the Amended Complaint, and his say-so in the response brief does not make it true.

In addition, Plaintiff misapprehends Oshkosh's point about the percentage of revenue sharing that goes "to pay recordkeeping expenses." Oshkosh understands that all revenue sharing, by design, is initially allocated to recordkeeping; but Plaintiff's net-investment-expense theory is predicated on the idea that participants will get the revenue-sharing component of the expense ratio back in the form of a rebate to their accounts. (Am. Compl. ¶ 131.) But there may not be "excess" revenue at all once an expense ratio's revenue-sharing extraction is applied against recordkeeping

8

costs, and certainly not in the full amount of revenue-sharing extraction. And even when "excess" revenue remains, it can be credited back to a plan in a variety of ways other than as a direct rebate to participants, such as paying costs to furnish plan documents or make qualified domestic relation order determinations, or by offsetting hardship withdrawal fees. *See* DOL Field Assistance Bulletin No. 2003-03. To the extent that the total revenue-sharing portion of an investment's expense ratio pays for any of these other costs—or pays for anything other than a rebate to a plan's participants—Plaintiff's preferred share classes would necessarily not cost participants less.

Finally, Plaintiff attempts to elide Oshkosh's point about the timing of revenue-sharing rebates to participants, namely that fiduciaries could think it preferable to allow participants to invest more of their retirement assets on the front end, instead of paying a higher expense ratio due to revenue sharing and hoping for a rebate down the road.[5] Whether participants might receive rebates on an annual or quarterly basis, they still lose the ability to invest those amounts over time, which may leave them worse off. This is another reason why the Plan's share-class selections were not "objectively unreasonable," *Divane*, 953 F.3d at 988, and cannot show imprudence.

### 3. Plaintiff's Criticisms Of The Plan's Recordkeeping Fees Fail To Create Any Inference Of Imprudence.

Oshkosh's opening brief explained why Plaintiff fails to show imprudence by attacking the structure or amount of the Plan's recordkeeping fees. (MOL at 17-20.) Plaintiff's opposition makes an important clarification: he does not assert that the Plan's use of revenue sharing—or anything else about the Plan's fee *structure*—shows imprudence. (Opp'n at 3 n.2 ("Plaintiff has not stated any preference for how fees are assessed[.]"); *see id.* at 14-15 (similar).) Rather, Plaintiff

---

[5] To roughly analogize to the tax world, these alternatives are similar to how some taxpayers (i) may prefer to maximize their take-home pay in each paycheck, so they have more money in their pockets throughout the year, whereas other taxpayers (ii) may prefer to receive a little less each pay period, with the hope of receiving a bigger tax refund at the end of the year in a lump sum. Reasonable people do both.

9

argues only that the *amount* of the Plan's recordkeeping fees is enough to create an inference that Oshkosh's process was imprudent. The Seventh Circuit has held otherwise.

In *Divane*, the Court of Appeals found "no ERISA violation with Northwestern's recordkeeping arrangement," despite the fact that the plan's alleged recordkeeping fees ($153 to $213 annually per participant) were significantly greater than the alleged recordkeeping fees for the Plan here (an average of $87 annually per participant, *see* Am. Compl. ¶ 100). In so holding, the Seventh Circuit did not necessarily announce that a certain level of fees are "*per se* reasonable," as Plaintiff says Oshkosh is trying to characterize that decision (*see* Opp'n at 15); rather, the Seventh Circuit held that, without plausible allegations about a fiduciary's process, courts cannot infer imprudence merely because a plan's recordkeeping fees were at the amounts alleged. *See, e.g., Martin*, 2020 WL 3578022, at *4 ("The Seventh Circuit held that such fees were not inconsistent with prudent portfolio management." (citing *Divane*, 953 F.3d at 989-90)).[6] That takeaway must hold here, especially because the Plan's fees were decidedly beneath even the low end of the range in *Divane*, and because the Northwestern plan was nearly twice as big and thus had nearly twice the alleged "bargaining power" (*see* MOL at 18 n.18) as the Oshkosh Plan.[7]

Plaintiff's opposition offers a few other arguments, but they are all without merit. For one, despite the "apples to oranges" nature of his chart of allegedly "similar plans" (*see* Am. Compl. ¶

---

[6] At one point, Plaintiff suggests that *Divane* is already stale because "what was reasonable for recordkeeper costs in the years 2010 or 2015 is not necessarily reasonable in the year 2020." (Opp'n at 16.) This tactic falls flat. First, other courts have not applied *Divane* so woodenly. *E.g., Martin*, 2020 WL 3578022, at *4 (finding that fees ranging from $131 to $222 were not reflective of imprudence, even over a more recent period). Second, the allegations in *this case* date back to 2014. Surely, the amount of a reasonable fee in 2015 is relevant to the claims that Oshkosh overpaid its recordkeeper from 2014-2020. Finally, even if Plaintiff were correct that the Court should expect to see some decrease in fees given the passage of time, the amount of the Plan's fees as alleged by Plaintiff here are decidedly less than those in *Divane*.

[7] Just as the *Martin* court appropriately recognized on similar facts, "[a]n inference of imprudence based on the average cost of recordkeeping is even less plausible here than in *Divane*, because [the] Plan is smaller and has fewer participants. Here, then, there are fewer economies of scale, and Defendants had less leverage to negotiate smaller fees." *Martin*, 2020 WL 3578022, at *4 n.6.

10

110; MOL at 19-20), Plaintiff doubles down on those allegations. He first suggests that the Court cannot even scrutinize the chart's factual assertions because this is a motion to dismiss, and he claims that Oshkosh is demanding "expert reports or analyses at the pleadings stage." (Opp'n at 17-18.) None of that is true. The Court is certainly permitted (and expected) to evaluate the plausibility of Plaintiff's allegations, perhaps even more so in a case like this where Plaintiff tries to use circumstantial allegations to create an inference of imprudence. *Cf. Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (granting motion to dismiss because plaintiff failed to provide "a meaningful benchmark" to support inference of imprudence). And Oshkosh's display of how Plaintiff's allegations are misleading is hardly tantamount to demanding "expert reports." Indeed, no expert is necessary to expose the meaninglessness of Plaintiff's chart.

On the chart's specifics, Plaintiff admits that he *did consider* both "direct compensation" and "indirect compensation" for purposes of Oshkosh's alleged "RK&A fees," but that he *did not consider* "indirect compensation" in calculating the "RK&A fees" for many of his proposed comparator plans, even though those plans reported indirect compensation to their recordkeepers. The justification? Plaintiff says he did not need to because the other plans "return[ed] revenue sharing to the plans." (Opp'n at 19-20.) But so did Oshkosh. (*See* MOL at 6 & n.8.)[8] If Plaintiff is going to conduct a "sound basis for comparison" of the Plan's recordkeeping fees with those of

---

[8] As Oshkosh's 2018 Form 5500 explains, the Plan here uses amounts received "under a revenue sharing arrangement … to pay the annual recordkeeping fees, and any excess amount is used to pay for activities that benefit the Plan participants." (Ex. 5, 2018 Form 5500, Fin. Stmts. at 9, "Other Income.") This is similar to the way that the other plans described their use of revenue sharing (*i.e.*, indirect compensation). (*See, e.g.*, Ex. 12, Republic National 2018 Form 5500, Fin. Stmts. at 7, "Administrative Expenses" (explaining that the plan uses "revenue sharing payments" to pay "certain Plan administrative expenses"); Ex. 14, Sutter Home 2018 Form 5500, Fin. Stmts. at 8, "Administrative Expenses" (explaining that the plan received "revenue credits" through its "revenue sharing agreement with Fidelity"); Ex. 15, Texas Children's 2018 Form 5500, Fin. Stmts. at 5, "Participant Accounts" (similar); Ex. 16, DHL 2018 Form 5500, Fin. Stmts. at 10, "Party in Interest Transactions" (similar).)

11

Case 1:20-cv-00901-WCG   Filed 11/16/20   Page 15 of 20   Document 32

other plans, he needs to include indirect compensation on both sides of the equation or neither side. *Cf. Meiners*, 898 F.3d at 822. That his chart admittedly failed to do so renders it useless.

Otherwise, Plaintiff suggests that Oshkosh's process was imprudent because it allegedly did not put the Plan's recordkeeping services "out to some form of competitive bidding." (Opp'n at 13.) The Seventh Circuit has rejected any inference of imprudence stemming from similar allegations about the lack of competitive bidding, as have other courts. *See Divane*, 953 F.3d at 990 (rejecting fiduciary-breach claim based on allegations that plan fiduciaries "should have solicited competitive bids"); *White v. Chevron Corp.*, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) ("[N]othing in ERISA compels periodic competitive bidding."); *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *7 (C.D. Cal. Apr. 24, 2020) (similar). This case should be no different. Finally, Plaintiff alleges that Oshkosh "did not follow … a prudent process by … failing to set forth any steps of the process that it followed." (Opp'n at 16.) That makes no sense. Not only is the allegation circular and self-fulfilling, but it is not Oshkosh's burden to "set forth" anything for purposes of Rule 12(b)(6), nor could Oshkosh do so. It is Plaintiff's Amended Complaint, and it is Plaintiff's burden to set forth plausible allegations to demonstrate that Oshkosh's decisions were "objectively unreasonable." *Divane*, 953 F.3d at 988. When it comes to the Plan's recordkeeping fees, he has not and cannot do so.

  **B.**  **Plaintiff Fails To State Any Disloyalty Or Monitoring Claims.**

Plaintiff's response hardly even touches on his claims for breach of the duty of loyalty or failure to monitor. (Opp'n at 28-29.) On the first point, Plaintiff concedes through silence that he cannot state a claim simply by slapping a "disloyalty" label on the same allegations he advances for his imprudence claims. (*See* MOL § III.C.) Because that is all he does, Plaintiff has waived his disloyalty claim. *See Klingforth v. Specialized Loan Servicing, LLC*, 2017 WL 5135606, at *2 (E.D. Wis. Nov. 6, 2017) (Griesbach, J.) (citing *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir.

12

2005) ("[W]here plaintiff 'did not present legal arguments or cite relevant authority to substantiate [his] claim in responding to defendants' motion to dismiss,' his 'claim has been waived[.]'")).[9] As for his failure-to-monitor claims, Plaintiff does not dispute that they are derivative of his underlying claims for fiduciary breach (Opp'n at 29), which means they fail along with them.

### C. Plaintiff Fails To State Any Prohibited Transaction Claims.

As Oshkosh explained (*see* MOL at 22-24), Plaintiff cannot state prohibited transaction claims based on Oshkosh's payment of negotiated fees to the Plan's service providers, Fidelity and SAI, because the "circular reasoning" underpinning his claims precludes the challenged payments from being characterized as prohibited transactions under ERISA at all.

Plaintiff's response ignores this point altogether, instead arguing that Oshkosh is seeking to rely on an exemption to ERISA's prohibited-transaction rules. (Opp'n at 30-31.) This puts the cart before the horse. Oshkosh is not invoking—and need not invoke—any prohibited-transaction *exemption* because Plaintiff's allegations do not even get to the point of describing any prohibited transaction to which an exemption might need to apply. Plaintiff's allegations simply show that the Plan was paying bargained-for fees to the Plan's third-party providers. Those payments are not prohibited transactions under ERISA, as the myriad cases described in Oshkosh's opening brief make clear. (*See* MOL at 23-24 and cases cited therein.) Plaintiff's silence on this point speaks volumes, and his prohibited-transactions claims fail.

---

[9] Indeed, the very structure of Plaintiff's opposition brief bears this out. He includes arguments regarding standing (Section I), the duty of prudence (Section II), the duty to monitor (Section III), and prohibited transactions (Section IV). At best, Plaintiff lumps his loyalty arguments together with his prudence arguments, but that's the very sort of bootstrapping that is not sufficient to state a claim.

13

### D. Plaintiff Lacks Article III Standing As To Investments He Never Selected.

Finally, even if the Amended Complaint stated plausible claims for relief under ERISA (and it does not), Plaintiff cannot establish Article III standing to pursue any claims based on investment options that he never selected as a Plan participant. (*See* MOL at 24-26.)

Plaintiff's opposition does not dispute (nor could it) that Plaintiff has never invested any of his retirement assets in nine of the Plan's 22 investment options over the relevant period.[10] (*See* Dkt. 27, Schmidt Decl. ¶¶ 4-5.) But Plaintiff still insists he has standing to pursue claims challenging those nine investments—investments in which he concededly never held any personal stake—by misreading the Supreme Court's decision in *Thole v. U.S. Bank.*

Plaintiff seizes on the fact that *Thole* involved a defined-benefit plan, not a defined-contribution plan. But the type of retirement plan at issue had no bearing on the Court's Article III analysis, because the Constitution does not distinguish between different types of ERISA plans. After all, "there is no ERISA exception to Article III." *Thole*, 140 S. Ct. 1615, 1622 (2020).[11] As such, the question the Supreme Court addressed was whether plaintiffs suffered any "personal" injury resulting from the alleged breaches of fiduciary duty. *Id.* at 1619. The Court determined the answer was "no" because the plaintiffs had not experienced any actual or imminent reduction in their accrued plan benefits. The same holds true here. Because Plaintiff never invested in nine of the investment options he challenges, he suffered no reduction in the value of his Plan account

---

[10] Oshkosh does not contest Plaintiff's Article III standing to pursue claims based on the thirteen investment options that he did actually select as a Plan participant. In this way, Plaintiff is mistaken in suggesting that Oshkosh is challenging his standing to "bring these claims" as a general matter. (*See* Opp'n at 9.)

[11] During the *Thole* argument, Justice Gorsuch asked about the very issue presented here: whether a defined-contribution-plan participant could file a lawsuit challenging an investment that he never selected. Plaintiffs' counsel conceded that a plaintiff in that circumstance would *not* have standing to sue. *See Thole*, No. 17-1712, Tr. of Oral Arg. at 9-11. Given that the *Thole* plaintiffs were not even willing to endorse that idea of standing, it strains logic to suggest that the Court somehow intended to exempt the theory from its basic admonition that "there is no ERISA exception to Article III." *Thole*, 140 S. Ct. at 1842.

14

(*i.e.*, his benefits) due to the supposedly imprudent decision to include those options in the Plan. Plenty of pre-*Thole* cases reached the same conclusion for the same reasons. (*See* MOL § III.F and cases cited therein). And at least one federal court recently applied *Thole* to dismiss claims involving a defined-contribution plan on this basis, as well. *Ortiz v. Am. Airlines, Inc.*, 2020 WL 4504385, at *13 (N.D. Tex. Aug. 5, 2020), *appeal filed*, No. 20-10817 (5th Cir. Aug. 12, 2020).

Otherwise, Plaintiff's response conflates statutory standing with Article III standing. He argues that he can challenge investments that he never selected because he is bringing his claims in a representative capacity "on behalf of the [P]lan." (Opp'n at 11.) But the Supreme Court rejected that argument in *Thole*, too, explaining that "the cause of action does not affect the Article III standing analysis," because "Article III standing requires a concrete injury even in the context of a statutory violation." 140 S. Ct. at 1620-21; *see also Ortiz*, 2020 WL 4504385, at *13 ("That ERISA authorizes a participant to sue for restoration of plan losses does not affect the Article III standing analysis."); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) (similar). Simply put, Plaintiff cannot acquire Article III standing by virtue of asserting claims "on behalf of" the Plan under ERISA.

## III. CONCLUSION

Accordingly, for the reasons above and as explained in Oshkosh's prior briefing, the Court should dismiss Plaintiff's Amended Complaint in full and with prejudice.[12]

---

[12] Because Plaintiff has now had "multiple opportunities to state a claim upon which relief may be granted," the Court should not—and need not—afford him yet another chance to re-plead his claims, but should dismiss this action with prejudice. *See, e.g.*, *Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322-23 (7th Cir. 1998)).

15

Dated: November 16, 2020

*s/ Deborah S. Davidson*

Deborah S. Davidson
Samuel D. Block
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: 312.324.1159/1715
Fax: 312.324.1001
deborah.davidson@morganlewis.com
samuel.block@morganlewis.com

Bernard J. Bobber
Kevin J. Kinney
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1243 North 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: 414.239.6300
Fax: 414.755.8289
bernard.bobber@ogletree.com
kevin.kinney@ogletree.com

Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5258
Fax: 215.963.5001
jeremy.blumenfeld@morganlewis.com

Mark E. Schmidtke
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: 219.242.8668
Fax: 219.242.8669
mark.schmidtke@ogletree.com

Matthew J. Sharbaugh
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202.739.5623
Fax: 202.739.3001
matthew.sharbaugh@morganlewis.com

*Attorneys for Defendants*

DB1/ 116813168