ANDREW ALBERT, individually and as representative of
a Class of Participants and Beneficiaries on Behalf of the
Oshkosh Corporation and Affiliates Tax Deferred
Investment Plan,

                Plaintiff,

    v.                                                                            Case No. 20-C-901

OSHKOSH CORPORATION, et al.,

                Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

      Plaintiff Andrew Albert, a participant in the Oshkosh Corporation and Affiliates Tax Deferred Investment Plan (the Plan), brings this case as a proposed class action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(2), against Defendants Oshkosh Corporation, the Board of Directors of the Oshkosh Corporation, the Administrative Committee of the Oshkosh Corporation and Affiliates Employee Benefit Plans, and John Does 1–30. The case is before the Court on Defendants' motion to dismiss the amended complaint. The Court held oral argument on the motion on December 18, 2020. For the following reasons, Defendants' motion to dismiss will be granted.

### LEGAL STANDARD

      A motion to dismiss tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the

non-moving party. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "Instead, to survive a motion to dismiss, a claim must be plausible." *Divane v. Nw. Univ.*, 953 F.3d 980, 988 (7th Cir. 2020) (citation omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In the ERISA context, a motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan*, 712 F.3d 705, 718 (2d Cir. 2013) (noting that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times"). ERISA "represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp*, 573 U.S. at 424 (internal quotation marks and citations omitted). "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). The Supreme Court has recognized that Congress wanted to avoid creating "a system that is so complex

2

that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefits plans in the first place." *Varity Corp v. Howe*, 516 U.S. 489, 497 (1996). Accordingly, the Seventh Circuit has explained that, "[w]hen claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988 (citation omitted).

## ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

In January 2018, Plaintiff commenced employment with Pierce Manufacturing, Inc., a wholly owned subsidiary of Oshkosh Corporation, as a welder. Am. Compl. ¶ 12, Dkt. No. 20. Plaintiff's employment with Pierce ended on April 1, 2020. *Id.* ¶ 13. Plaintiff was a participant in the Oshkosh Corporation and Affiliates Tax Deferred Investment Plan (the Plan). *Id.* ¶ 14. The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A). *Id.* ¶ 26. A defined contribution plan allows employees to make pre-tax elective deferrals through payroll deductions to an individual account under the plan. *Id.* ¶ 36. The Plan has approximately $1,100,000,000 in assets and over 12,000 participants. *Id.* ¶ 67.

Plaintiff claims that, at all relevant times, the Plan's fees were excessive when compared with other comparable 401(k) Plans offered by other sponsors that had similar numbers of plan participants and similar amounts of money under management. Plaintiff alleges that the excessive fees led to lower net returns than those returns that participants in comparable 401(k) Plans enjoyed. *Id.* ¶ 68. Plaintiff alleges that, during the putative Class Period, which is defined as June 15, 2014, through the date of judgment, Defendants, as fiduciaries of the Plan, breached the duties owed to the Plan, to Plaintiff, and to other plan participants by (1) authorizing the Plan to pay unreasonably high fees for recordkeeping and administration; (2) failing to objectively, reasonably, and adequately review the Plan's investment portfolio with due care to ensure that each investment

3

option was prudent, in terms of cost; and (3) unreasonably maintaining investment advisors and consultants for the Plan despite the known availability of similar service providers with lower costs and/or better performance histories. *Id.* ¶ 4. Defendants' recordkeeper during the Class Period was Fidelity Management Trust Company, a "well-known provider" of recordkeeping and administration services. *Id.* ¶ 82.

Plaintiff alleges that Defendants failed to regularly monitor the Plan's recordkeeping and administration fees paid to covered service providers, including Fidelity, failed to regularly solicit quotes and/or competitive bids from covered service providers in order to avoid paying unreasonable fees for recordkeeping and administration services, and failed to ensure that the Plan paid no more than a competitive reasonable fee for recordkeeping and administration services. *Id.* ¶¶ 90, 92, 94. He claims that the Plan's recordkeeping and administration service fees were significantly higher than they would have been had Defendants engaged in these processes. *Id.* ¶¶ 97–99. Plaintiff alleges that, from the years 2014 through 2018, the Plan had, on average, 11,496 participants and paid an average effective annual recordkeeping and administration fee of at least approximately $1,004,305, which equates to an average of at least approximately $87 per participant. *Id.* ¶ 100. He claims that, for the same time period, the annual recordkeeping and administration fees paid by other plans of similar sizes with similar amounts of money under management ranged from $30 to $45. *Id.* ¶ 101. Based on this information, Plaintiff asserts that a prudent plan fiduciary for the Plan would have paid on average an effective annual recordkeeping and administration fee of around $40 per participant. *Id.* ¶ 104. Plaintiff alleges that, because Defendants did not act in the best interests of the Plan, the Plan cost its participants a total minimum amount of approximately $2,722,365 in unreasonable and excessive recordkeeping and administration fees. *Id.* ¶ 108.

In addition, Plaintiff alleges that, during the Class Period, Defendants did not use share classes that provide the greatest benefit to plan participants and in some cases even switched from one share class to a different share class that charged a higher "net investment expense to retirement plans." *Id.* ¶ 134. Plaintiff claims that Defendants chose an investment option that effectively charges a fee that is around 27% higher than an alternative investment option that provides the identical services of the same portfolio manager. *Id.* ¶ 138. Plaintiff also alleges that the investment options selected by the Plan Fiduciaries were 986% more expensive than passive options covering the same asset allocation category. *Id.* ¶ 176. Plaintiff claims Defendants did not make a specific and informed finding that the higher fees charged by the active portfolio managers of the investment options selected by Defendants were warranted and in the best interest of plan participants. *Id.* ¶ 179. He alleges that, had Defendants acted in the best interests of the Plan's participants, Defendants would have selected funds with lower "net investment expense to retirement plans" than those funds actually selected by Defendants. *Id.* ¶ 183. Plaintiff claims that, during the Class Period, he had no knowledge of Defendants' process for selecting and regularly monitoring investments to ensure that the investments remained prudent selections, the recordkeeping and administration fee structure, or the revenue sharing rates associated with the investments selected by Defendants. *Id.* ¶¶ 185–86. He alleges that, had Defendants chosen other investment options, the Plan's participants would have received virtually identical portfolio management services at a lower cost. Plaintiff claims that both the expense ratios and the "net investment expense to retirement plans" of the Plan's investment options between the years 2014 to 2020 were more expensive by significant multiples of comparable passively managed and actively managed alternative funds in the same investment style. *Id.* ¶ 190. He asserts that, because Defendants failed to act in the best interests of the Plan's participants by engaging in an

objectively reasonable investigation process when selecting its investments, Defendants caused unreasonable and unnecessary losses to Plaintiff and the Plan's participants in the amount of approximately $15,948,073 through 2018. *Id.* ¶ 193.

Plaintiff also claims that excessive fees were paid to investment advisors and consultants. He alleges that Defendants entered into agreements that resulted in the Plan's assets being used to pay several service providers, including Strategic Advisors, Inc. (SAI), a registered investment advisor and subsidiary of Fidelity that provided "investment advisory services for a fee." *Id.* ¶¶ 206–07. Plaintiff claims that, during the Class Period through 2018, Defendants paid SAI in excess of $1,000,000 for fees and commissions with Plan assets. *Id.* ¶ 208. He asserts that the services rendered by SAI did not benefit plan participants, including Plaintiff. *Id.* ¶ 209. In particular, he alleges that the services provided by SAI provided virtually no value to some participants and a negative value to other participants compared to other similar services and options available in the Plan. He alleges Fidelity earned more investment advisory revenue from the SAI services compared to the revenue Fidelity would have received if a participant was invested in a different option. *Id.* ¶ 213. Plaintiff claims Defendants, as plan fiduciaries, engaged in prohibited transactions under 29 U.S.C. § 1106(a)(1)(C) because the fees charged by SAI were excessive and unreasonable. *Id.* ¶ 220.

Plaintiff alleges Defendants failed to properly disclose the fees charged to plan participants in their quarterly statements. *Id.* ¶ 223. He claims he has been harmed by Defendants' failure to disclose because he did not have all the information necessary to make an informed investment decision. *Id.* ¶ 231.

Plaintiff asserts nine claims for relief: breaches of duties of loyalty and prudence regarding recordkeeping and administration fees (Count I); breaches of duties of loyalty and prudence

6

regarding investment management fees (Count II); breaches of duties of loyalty and prudence regarding service provider fees (Count III); failure to adequately monitor other fiduciaries regarding recordkeeping and administration fees (Count IV); failure to adequately monitor other fiduciaries regarding investment management fees (Count V); failure to adequately monitor other fiduciaries regarding service provider fees (Count VI); engaging in party in interest prohibited transactions regarding recordkeeping and administration fees (Count VII); engaging in party in interest prohibited transactions regarding investment management fees (Count VIII); and engaging in party in interest prohibited transactions regarding service provider fees (Count IX).

## ANALYSIS

### A. Breach of Fiduciary Duty

Plaintiff alleges that Defendants failed to act as prudent fiduciaries when they caused the Plan to pay excessive recordkeeping costs, did not retain the least costly share class of each fund, retained high-cost funds, and paid excessive service provider fees to SAI and Fidelity. A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). "A fiduciary must behave like a prudent investor under similar circumstances." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). "In order to assess the prudence of the fiduciary's actions, they must be evaluated in terms of both procedural regularity and substantive

7

reasonableness." *Allen*, 835 F.3d at 678 (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014)).

It is important to note, however, that an employer who offers a defined contribution plan with a wide variety of investments from which employees can choose based on their individual circumstances and retirement goals is not thereby transformed into a personal investment advisor for each employee/participant. *See White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 994 (7th Cir. 2013) (noting "ERISA does not require fiduciaries of an EIAP [Employee Individual Account Plan] to act as personal investment advisers to plan participants"), *abrogated on other grounds*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). Employers, such as Oshkosh, have neither the desire, nor the ability, to serve as personal investment advisors to their employees. "They do not have enough information about an employee's other assets, family circumstances, risk tolerance, and so on, to provide such individual advice." *Id.* Instead, the plan provided by Oshkosh "gives participants the control by design, and it gives employees the responsibility and freedom to choose how to invest their funds." *Id.* The fiduciary duty of the administrators of such an ERISA plan differs substantially from that of a personal financial advisor.

"Importantly, the prudence standard is processed-based, not outcome based." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). A Plan's mere underperformance, absent any allegations of imprudence, is not actionable. *Divane*, 953 F.3d at 992; *see DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990) ("[T]he ultimate outcome of an investment is not proof of imprudence."); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011). A claim for breach of fiduciary duty must therefore focus on "a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[] whether a fiduciary employed the appropriate methods to investigate and determine the merits of

a particular investment." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). Because ERISA plaintiffs generally do not have "inside information" regarding the fiduciary's process, the Seventh Circuit has recognized that "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678 (citation omitted). But even though a plaintiff need not allege specific details regarding the fiduciary's process, the plaintiff must still "plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988 (citing *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)). As the Northern District of Illinois recently observed in *Martin*,

> [i]n applying these considerations, the Seventh Circuit has repeatedly cautioned that plaintiffs and courts cannot use ERISA to paternalistically dictate what kinds of investments plan participants make where the Plan offers a range of investment options. *See Divane*, 953 F.3d at 989. It has accordingly affirmed dismissal of ERISA complaints alleging that some combination of high fees and under-performing funds signaled imprudence, where the plans in question offered some cheaper alternatives, and the complaint did not include allegations speaking to flawed decision-making or self-dealing. *Divane*, 953 F.3d at 988–92; *Loomis*, 658 F.3d at 671–73 (rejecting the "paternalistic" theory that a Plan should not offer expensive or erratically performing options); *Hecker*, 556 F.3d at 585–87 (holding that revenue sharing is not per se problematic, and that a Plan is not imprudent for offering high-fee funds, so long as it also offers a "mix" of alternatives); *see also Velazquez v. Massachusetts Financial Series Company*, 320 F. Supp. 3d 252, 258–59 (D. Mass. 2018) (collecting cases from various circuits and concluding "[t]he principal distinguishing feature between [plaintiff- and defendant-friendly caselaw] is whether or not self-dealing is alleged.").

2020 WL 3578022, at *4. In other words, the allegations must support more than the mere possibility that a breach of fiduciary duty occurred; to "unlock the doors of discovery," the allegations must make the claim plausible. *Iqbal*, 556 U.S. at 668–69. With these considerations in mind, the Court now turns to Plaintiff's allegations.

**1. Recordkeeping Fees**

Plaintiff asserts that Defendants breached their fiduciary duties by causing the Plan to pay excessive recordkeeping fees. He alleges that Defendants did not follow a prudent process because

9

they did not question Fidelity's fees at all or otherwise investigate or consider alternative recordkeeping vendors who could have provided the same services at substantially less cost. Plaintiff asserts that the recordkeeping fees paid by the Plan were more than twice what the Plan should have paid and greatly exceed the normal range for plans its size. He alleges through charts, graphs, and tables that the same or different recordkeepers have accepted lower recordkeeping fees from similar plans with approximately the same number of participants and the same amount of assets under management during the statutory time period. Plaintiff asserts that these allegations allow for the plausible inference of a flawed process and imprudence.

As an initial matter, Plaintiff's assertion that Defendants breached their fiduciary duty by failing to regularly solicit quotes or competitive bids from covered service providers was rejected by the Seventh Circuit in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020). In that case, the court affirmed dismissal of an amended complaint asserting similar claims against Northwestern University's employee retirement plan. The court rejected the plaintiffs' theory that the defendant breached its fiduciary duty by failing to solicit quotes or competitive bids for recordkeeping services. It observed that the defendant "was not required to search for a recordkeeper willing to take $35 per year per participant as plaintiffs would have liked." *Id.* at 991. In short, nothing required Defendants to regularly solicit quotes or competitive bids in order to satisfy their fiduciary duties.

Defendants also cite *Divane* to support their argument that Plaintiff's criticisms of the amount of the Plan's recordkeeping fees fail to create any inference of imprudence. In *Divane*, the court found the plan's recordkeeping fees—which averaged between $153 and $213 annually per participant—were reasonable. *Id.* at 984. It explained:

> There is . . . nothing wrong—for ERISA purposes—with plan participants paying recordkeeper costs through expense ratios. Northwestern was not required to search

> for a recordkeeper willing to take $35 per year per participant as plaintiffs would have liked. *See* [*Hecker*, 556 F.3d] at 586 ("Nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."). Plaintiffs have identified no alternative recordkeeper that would have accepted such a low fee or any fee lower than what was paid to Fidelity and TIAA. And plaintiffs have failed to explain how a hypothetical lower-cost recordkeeper would perform at the level necessary to serve the best interests of the plans' participants. We find no ERISA violation with Northwestern's recordkeeping arrangement.

*Id.* at 991 (alterations omitted).

In this case, Plaintiff does not allege any facts as to what would constitute a reasonable fee or any facts suggesting that the fee charged by Fidelity is excessive in relation to the services provided. Although Plaintiff alleges that the recordkeeping fee is twice the amount of other fees, Plaintiff fails to state why the fee is unreasonable. The mere existence of purportedly lower fees paid by other plans says nothing about the reasonableness of the Plan's fee, and it does not make it plausible that another recordkeeper would have offered to provide the Plan with services at a lower cost. Like the plaintiffs in *Divane*, Plaintiff has "identified no alternative recordkeeper that would have accepted such a low fee or any fee lower than what was paid" and "failed to explain how a hypothetical lower-cost recordkeeper would perform at the same level necessary to serve the best interests of the plans' participants." *Id.* at 990; *see also Martin*, 2020 WL 3578022, at *4 n.6 ("An inference of imprudence based on the average cost of recordkeeping is even less plausible here than in *Divane*, because Defendants' Plan is smaller and has fewer participants. Here, then, there are fewer economies of scale, and Defendants had less leverage to negotiate smaller fees."). Without plausible allegations about Defendants' process, the Court cannot infer imprudence merely because the Plan's recordkeeping fees were at the amounts alleged.

### 2. Share Class

Plaintiff's allegations that Defendants breached their fiduciary duties when they did not retain the least costly share class of each fund fare no better. Plaintiff alleges that Defendants failed to retain low-cost share classes of several mutual funds for the Plan when such share classes were offered to other investors. He maintains that there is no difference between the share classes other than cost.

Defendants assert that the Seventh Circuit rejected attempts to show imprudence by challenging the cost of certain investments in *Divane*. In that case, the plaintiffs alleged that the fiduciaries were imprudent by failing to utilize lower-cost share classes. The Seventh Circuit held that "plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty." *Divane*, 953 F.3d at 992 (citing *Loomis*, 658 F.3d at 673–74; *Hecker*, 556 F.3d at 586). Plaintiff asserts that the Seventh Circuit's cases are distinguishable because they "generically dealt with comparisons between higher-cost retail funds and lower-cost institutional funds," while Plaintiff's "more precise factual allegations" assert a "net investment expense to retirement plans" theory of liability that was not considered in those cases. Pl.'s Resp. Br. at 20–21. Plaintiff alleges that a prudent plan fiduciary must ensure that "the Plan selects the share class that provides the greatest benefit to plan participants given the institutional advantages provided to retirement plans in relation to retail investors." Am. Compl. ¶ 130. The "net investment expense to retirement plans," Plaintiff explains, is the "share class that gives plan participants access to the portfolio managers at the lowest net fee for the services of the portfolio manager." *Id.* Plaintiff alleges that Defendants knew or should have known that they are required to select the share classes that provide the greatest benefit to plan participants, or the lowest net investment expense to retirement plans, because either the amount of the fee extraction to cover the recordkeeping and

12

administration fee will be lower or the amount of excess revenue being credited back to participant accounts will be greater. *Id.* ¶¶ 131–32. He claims that Defendants did not engage in an objectively reasonable search for or select the share classes that provide the lowest net investment expense to retirement plans. *Id.* ¶ 135. Plaintiff asserts that the "net investment expense to retirement plan" theory applies regardless of whether the share classes are considered retail or institutional. Pl.'s Resp. Br. at 21.

Even though the Seventh Circuit has not addressed imprudence based on a net investment expense to retirement plans theory (primarily because it is a novel concept created by Plaintiff), the crux of Plaintiff's argument is that Defendants should have selected share classes that would have cost participants less. This proposition has been rejected by the Seventh Circuit. *See Divane*, 953 F.3d at 991–92; *Hecker*, 556 F.3d at 586 ("The total fee, not the internal post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment."). Plaintiff's preference for different share classes of certain investments is not enough to state a plausible claim for breach of fiduciary duty.

### 3. High-Cost Funds

Plaintiff also alleges that Defendants breached their fiduciary duties by retaining high-cost actively managed investments. Am. Compl. ¶ 179. Plaintiff does not allege that the Plan should have only offered passively managed investments or that it was imprudent for the Plan to offer any actively managed investments. He maintains that, although actively managed funds can be part of the mix of investments of a Plan if a prudent process has been followed in selecting them, Defendants breached their fiduciary duties by failing to make a specific and informed finding regarding the cost of the investment options in the Plan. *Id.* Though Plaintiff asserts that

Case 1:20-cv-00901-WCG   Filed 09/02/21   Page 13 of 17   Document 46

Defendants' process is flawed, he concedes that he does not have knowledge of Defendants' process for selecting and monitoring investments. The Court is not required to accept these "unsupported conclusory factual allegations." *See Divane*, 953 F.3d at 987.

The amended complaint also contains comparative tables, which Plaintiff contends show that the investment options selected by the Plan were 986% more expensive than passive options covering the same asset allocation category. Am. Compl. ¶¶ 172–76. Plaintiff alleges that, from these comparative tables, the Court can infer that Defendants used an imprudent process. Again, under the law of this circuit, "plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty." *Divane*, 953 F.3d at 992; *see also Loomis*, 658 F.3d at 670 ("By offering a wide range of options . . . [a] plan complie[s] with ERISA's fiduciary duties."); *Hecker*, 556 F.3d at 586 (no breach of duty where participants could choose to invest in 26 investment options and over 2,500 mutual funds). The Plan in this case offered a diverse mix of investments. The fact that the Plan offered certain actively managed options does not establish that Defendants acted imprudently. "[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586. Therefore, Plaintiff has failed to state a claim on this basis.

**4. Disclosure of Fees**

Plaintiff alleges that Defendants failed to fully disclose fees charged or credited to the Plan investments. Am. Compl. ¶¶ 221–32. But the Seventh Circuit has recognized that fiduciaries are not required to disclose "information about the revenue-sharing arrangement." *Hecker*, 556 F.3d at 586. Although Plaintiff asserts that "citations to *Hecker* for disclosure purposes are both outdated and completely irrelevant," Pl.'s Br. at 23, *Hecker* remains the law of this circuit which, of course, is binding on this Court. In short, Defendants are not required to disclose fees charged

or credited to the Plan investments with the level of detail sought by Plaintiff. Plaintiff has failed to allege that Defendants breached a fiduciary duty by failing to retain low-cost share classes.

### 5. Service Provider Fees

Plaintiff claims that the fees paid by the Plan to its service provider, SAI, were excessive and unreasonable in relation to the services actually provided by SAI. Am. Compl. ¶ 214. In particular, Plaintiff alleges, upon information and belief, that Defendants did not solicit competitive bids from other service providers similar to SAI or evaluate whether other service providers could provide the same or superior benefits and services provided by SAI at a lower cost to the plan participants. *Id.* ¶ 216. Defendants assert that Plaintiff's allegations are conclusory and implausible as he does not offer any factual allegations to support his claim that the fees charged were excessive. Plaintiff does not allege that a lower-cost alternative would provide comparable services. Again, the existence of a lower-cost alternative service provider says nothing about Defendants' prudence in selecting SAI as a service provider and does not make it plausible that another service provider would offer the same service at a lower cost. *See Divane*, 953 F.3d at 990. Without plausible allegations regarding Defendants' process, the Court cannot infer imprudence merely because the service provider fees were at the amounts alleged.

### B. Remaining Claims

Plaintiff's remaining claims against Defendants fail as well. Plaintiff asserts that Defendants breached ERISA's duty of loyalty, which requires fiduciaries to act solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104(a)(1). Plaintiff's breach of the duty of loyalty claim is based on the same allegations as the breach of fiduciary duty claim. Plaintiffs must do more than recast allegations of purported breaches of fiduciary duty as disloyal acts. *See Martin*, 2020 WL 3578022, at *6 (collecting cases). Because the Complaint does not contain any

allegations beyond those pertaining to an alleged breach of fiduciary duty, Plaintiff's claims must be dismissed.

Plaintiff also alleges that Defendants breached their duty to monitor. Plaintiff's breach of the duty to monitor claim is derivative of the breach of fiduciary duty claim. Because Plaintiff has failed to state a claim for breach of fiduciary duty, his breach of the duty to monitor claim must be dismissed. *See Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010) ("[A] failure to monitor claim is derivative in nature and must be premised [on] an underlying breach of fiduciary duty. Without an underlying breach of fiduciary duty, [the plaintiff's] claim for failure to monitor fails on its merits." (citations omitted)).

Finally, Plaintiff asserts that Defendants engaged in prohibited transactions with Fidelity and SAI in violation of 29 U.S.C. § 1106(a) by paying excessive and unreasonable compensation for services. Section 1106 prohibits ERISA fiduciaries from "causing a plan to enter into a variety of transactions with a 'party in interest.'" *Fish*, 749 F.3d at 679 (citing *Keach v. U.S. Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005)). Defendants do not dispute that Fidelity and SAI are parties in interest because they provide services to the Plan. Instead, Defendants assert that Plaintiff cannot state a prohibited transaction claim based on Defendants' payment of negotiated fees to the Plan's service providers. Courts that have addressed this issue have dismissed prohibited transaction claims based on the "circular reasoning" that "an entity which becomes a party in interest by providing services to the Plans has engaged in a prohibited transaction simply because the Plans have paid for those services." *Sacerdote v. N.Y. Univ.*, No. 16-cv-6284, 2017 WL 3701482, at *13 (S.D.N.Y. Aug. 25, 2017); *see also Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018). Plaintiff's allegations that Defendants paid Fidelity and SAI excessive fees for their services, without more, do not state a prohibited transaction claim.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 25) is **GRANTED**. Plaintiff's motion for leave to file a sur-reply (Dkt. No. 34) and Defendants' motion to supplement (Dkt. No. 39) are **GRANTED**. The Clerk is directed to detach and e-file the sur-reply (Dkt. No. 34-1) and supplemental brief (Dkt. No.39-1). The amended complaint fails to state a claim upon which relief can be granted and will be dismissed for that reason pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court may dismiss a case with prejudice when there is no doubt that there exists no set of facts from which a plaintiff can prove he is entitled to relief. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Plaintiff has already amended his complaint once and has not requested leave to do so again in the face of the motion to dismiss. Therefore, this case is **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 2nd day of September, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge